Cite as 2024 Ark. App. 576

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-19

| | | |
|---|---|---|
| ROBBIE C. HARVEY | | Opinion Delivered November 20, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-20-2456] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE KAREN D. WHATLEY, JUDGE |
| | | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Robbie Harvey ("Harvey") appeals the Pulaski County Circuit Court's conviction for second-degree sexual assault and resulting sentence of five years' probation. On appeal, Harvey argues that the circuit court erred by denying his motion to dismiss based on his allegation that the State failed to set forth sufficient evidence at trial that he was in a position of trust or authority over the victim, a minor child ("MC"). We affirm.

### I. *Background Facts*

On April 8, 2020, Harvey picked up sixteen-year-old MC from her home in Cabot, Arkansas. MC was planning to spend the weekend with Harvey and his wife in Jacksonville. MC testified that Harvey was a family friend, and they were "extremely close" because she spent a lot of time with him "growing up." She explained that Harvey was like a father figure,

and she referred to him as "papa." Brenda Winstead ("Brenda"), MC's mother, testified that she knew Harvey and his wife because her family moved across the street from them when she was approximately fourteen years old. Brenda stated that she became friends with Harvey's daughter, and she considered Harvey and his wife "parental figures."

After picking MC up at her home, Harvey began making sexually inappropriate comments toward MC. MC testified that Harvey told her she needed to stop wearing tight clothes because it was "turning him on," asked her if she was a virgin, and asked whether she "[thought] about him the way [he] thinks about [her]." Harvey then placed his hand on MC's thigh and started rubbing it and asked MC "if eight inches was enough to fill [her] up." MC stated that Harvey also lifted his leg, pulled up his shorts, and attempted to pull out his penis. MC testified that she pushed Harvey's hand away but that he continued, and then he grabbed her vagina.

At this point, MC sent her brother a text and asked him to come pick her up. However, he originally told MC that he could not do so because he was at work. MC testified that she needed her brother to understand that it was an "emergency," so she started recording what was happening on her phone and sent the video to her brother. The video, which was played in court, showed Harvey's hand on MC's thigh and MC's hand pushing Harvey's away. The following exchange between MC and Harvey was captured on video:

MC:              Stop—Papa, it's weird. Stop.

HARVEY:      Nah, it ain't.

MC:              It is. Stop, papa.  It's weird.

Subsequently, MC asked Harvey to stop at McDonald's so that she could use the restroom. However, because the McDonald's was closed due to COVID, Harvey drove MC across the street to a Walgreens. MC stayed in the bathroom at Walgreens until her brother arrived to pick her up. When she returned to Harvey's car to retrieve her bag, MC stated that Harvey said, "Please don't tell anyone. I'm sorry. It won't happen again." Later that day Harvey sent MC a text saying, "I'm sorry. It won't happen again. Don't say anything."

Harvey was charged with one count of second-degree sexual assault, and the State alleged that he engaged in sexual contact with the sex organs of a minor child while in a position of trust or authority over the minor. He was also charged with one count of misdemeanor indecent exposure; however, the circuit court dismissed the charge at trial. At the close of the State's case and the close of all evidence, Harvey sought dismissal of the second-degree sexual-assault charge, arguing that the State's proof that Harvey held a position of trust or authority over MC was insufficient. The circuit court denied the motion both times. Harvey was convicted of one count of second-degree sexual assault by the circuit court and sentenced to five years' probation. He filed a timely notice of appeal; this appeal followed.

II. *Standard of Review*

A motion to dismiss at a bench trial is identical to a motion for directed verdict at a jury trial in that it is a challenge to the sufficiency of the evidence. Ark. R. Crim. P. 33.1 (2023); *Jordan v. State*, 2014 Ark. App. 325, at 1. This court will affirm a circuit court's denial

3

of the motion if there is substantial evidence, either direct or circumstantial, to support the verdict. *Terry v. State*, 2018 Ark. App. 435, at 3, 559 S.W.3d 301, 303. Substantial evidence is defined as evidence forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* at 3–4, 559 S.W.3d at 303. The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict is considered. *Id.* at 4, 559 S.W.3d at 303.

### III. *Discussion*

A person commits second-degree sexual assault if the person engages in sexual contact with a minor and was a position of trust or authority over the minor. Ark. Code Ann. § 5-14-125(a)(4)(A)(iv) (Supp. 2023). Here, Harvey does not challenge the State's proof that sexual contact occurred with MC. Instead, Harvey maintains that the State failed to set forth sufficient evidence that Harvey was in a position of trust or authority over MC.

This court has held that the statutory threshold of "position of trust or authority" is met where a relationship raises a strong inference of trust and supervision and where the appellant's function in the relationship could be characterized, at a minimum, to be that of a chaperone. *Milton v. State*, 2023 Ark. App. 382, at 8, 675 S.W.3d 173, 178. Harvey asserts that there was no "continuance of the relationship" because none of the witnesses could recall when MC had last seen Harvey prior to April 8, 2020. Moreover, Harvey explains that because MC had the ability to get out of his vehicle at McDonalds, she was "free to leave," and because she "[stood] up to him" and pushed his hand off her leg, there was no strong inference of trust or supervision. We find this argument unavailing.

The evidence, including MC's testimony, establishes that Harvey was in a position of trust or authority over MC. MC testified that she knew Harvey because he helped raise her and was a family friend; MC described Harvey as a father and grandfather figure in her life; and MC referred to Harvey as "papa." MC's mother, Brenda, testified that she met Harvey when she was approximately fourteen years old, and he was her neighbor at that time; Brenda stated she became friends with Harvey's daughter and that she viewed Harvey and his wife as parental figures; she also said that she maintained a relationship with Harvey, and when she had children, Harvey and his wife celebrated birthdays and holidays with her and her children. Furthermore, Brenda testified that her children referred to Harvey and his wife as "nana and papa" and that when MC was younger, she executed a legal document giving Harvey and his wife authority to make healthcare decisions for her children (including MC) when they were in Harvey's care. Brenda testified that she trusted Harvey to care for and supervise her children when they were alone with him. Finally, in MC's initial statement to the police, she explained that she was headed to Jacksonville to "stay at [her] grandparents' house for the weekend."

Harvey's attempt to highlight the fact that MC and Brenda could not specify how often MC had seen Harvey from 2017 to 2020 is merely a request to have this court reweigh the evidence. However, the credibility of witnesses and the weight of the evidence are matters for the finder of fact to decide, and this court may not reweigh the evidence or substitute its own credibility determinations for those of the finder of fact. *Baker v. State*, 2022 Ark. App. 391, at 7, 654 S.W.3d 63, 67. Additionally, Harvey offers no citation to authority in support

5

of his contention that the ten to fifteen minutes MC spent in the car with him was "not nearly enough time to establish a strong inference of trust or supervision" or that somehow by insisting on leaving, "[MC] was showing her independence," thereby proving that she did not trust Harvey; therefore, we decline to address it on appeal. *See Morales v. Arias*, 2022 Ark. App. 174, at 11, 643 S.W.3d 883, 891. Because the evidence presented to the circuit court—on the count of second-degree sexual assault—did not require it to resort to speculation and conjecture to convict Harvey, we affirm the conviction.

## IV. *Conclusion*

For the above-stated reasons, we hold that Harvey's conviction for second-degree sexual assault was supported by substantial evidence; thus, we affirm.

Affirmed.

HARRISON, C.J., and BROWN, J., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.